[No. 3887.]

THE COLUMBIA BUILDING & LOAN ASSOCIATION v. CLARKE.

APPELLATE PRACTICE—FINDINGS OF TRIAL COURT.
The findings of the trial court on conflicting evidence will not be disturbed on review.

*Appeal from the District Court of Arapahoe County.*

Mr. W. S. DECKER, for appellant.

Mr. CHARLES J. HUGHES, Jr., for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

On August 29, 1893, John F. Depew gave his promissory note to appellant, the Columbia Building & Loan Association, for $5,000, and to secure the same gave a deed of trust upon lots 18, 19 and 20 in block 29, Wyman's Addition to Denver. On the day following the execution of the note and the deed of trust, Depew conveyed the property to Frances M. Clarke, the appellee. In March, 1895, appellant advertised the property for sale under the deed of trust, where-

upon appellee brought this suit to enjoin the sale, upon the ground that the $5,000 represented by the note had been paid by the sale to the association of certain stock in the Denver & San Antonio Investment Company, and averring that if the proceeds of the stock were not sufficient to discharge the note and interest, she was ready and willing to pay any balance found due. The appellant denied that any part of the note had been paid, and alleged that the stock sold to it had been applied to the payment of other indebtedness due the association from J. W. Clarke, W. P. Caruthers, C. J. Eastman and the Washington Investment Company.

The circumstances out of which this controversy arises are in brief as follows: On March 22, 1893, the appellee loaned to W. P. Caruthers $112\frac{50}{100}$ shares of the capital stock of the Denver & San Antonio Investment Company, to use as collateral security for a loan to him of $3,500 from the Columbia Building & Loan Association; for which sum a note was then given, signed by himself and J. W. Clarke, the husband of appellee, to which the stock was attached, and which contained this recital:

"This note is secured by $112\frac{1}{2}$ shares of stock in the Denver & San Antonio Investment Co. herewith attached—Book value $140 per share. Cash rate at par."

Shortly thereafter twenty-two shares of this stock were withdrawn, with the consent of the association, leaving the remaining $90\frac{28}{100}$ shares as security for the note. On August 13, 1893, Mrs. Clarke paid this note by executing to the association a note for the sum of $3,700, which covered the principal and interest due thereon, and left with the association as security the stock theretofore hypothecated. Between August 22, 1892, and August 29, 1893, and while J. W. Clarke was president, W. P. Caruthers, vice president, and C. J. Eastman secretary and manager of the association, certain loans were made in the name of the Washington Investment Company, aggregating $6,900, which together with the $3,700 note, and the note for $5,000 executed by Depew, constituted an indebtedness of $15,600 due the association.

It is claimed by appellant that the loans to the Washington Investment Company, while made in the name of that company, were as a matter of fact made for the personal benefit of Clarke, Caruthers and Eastman, and that the same were insufficiently secured; and that upon being pressed for payment on several occasions between June 3 and August 29, 1893, Clarke assured other officers of the company that the San Antonio stock should be held as security for this indebtedness.   On October 13, 1894, a written agreement was entered into between Clarke, Caruthers and appellee, and the Columbia Building and Loan Association, whereby the stock in question was transferred to the association in consideration that the association should credit upon the indebtedness for which it had theretofore been pledged, the sum of $9,028.   Appellant contends that the indebtedness therein referred to was the whole indebtedness of $15,600; while appellee claims that it referred to her personal indebtedness, which consisted of the $3,700 note, to secure which the stock was expressly pledged, and the $5,000 note executed by Depew, which represented money borrowed for her own use.

The only written evidence introduced that specified the indebtedness for which the stock was pledged, is the recital upon the $3,500 note before mentioned.   Witnesses for appellant, however, testified that a written agreement, which was supposed to have been destroyed, was prepared at the time the stock was transferred in October, 1894, and signed by the respective parties, wherein appellee expressly agreed that the stock should be applied to the payment of the general indebtedness made up of the sums claimed to be due from Clarke, Caruthers, Eastman and the Washington Investment Company, in addition to the note of $3,700.   But later during the trial this agreement was found and produced in evidence, and showed that the witnesses were mistaken in their recollection as to its contents, since it contains no provisions for the distribution of the proceeds of the stock.   The oral testimony introduced by the parties in support of their respective claims is in direct conflict; that of appellant being

in support of its position as above stated, that Clarke as the agent or representative of appellee, had from time to time, and finally on August 29, 1893, recognized the right of the association to apply the proceeds of the stock to the general indebtedness of $15,600. Clarke denied that he had ever agreed or consented to such application, but testified that the $90\frac{28}{100}$ shares of stock were never pledged for anything else than the $3,500 note. Appellee testified that she never pledged the stock for any other indebtedness than her own, which consisted of the $3,700 note and the Depew note of $5,000 ; and Caruthers testified that she positively refused to transfer the stock to the association except upon the express agreement that it should be applied to the $3,700 and $5,000 notes. Subsequent to the time this agreement is claimed to have been made between Clarke and the officers of the company, and on October 13, 1894, McNutt, Norman and Zollars, who were then officers of, and represented the association, met the appellee, her husband and Caruthers at the residence of James W. Clarke, for the purpose of arranging for the sale of the stock to the association. At that meeting these officers insisted that the proceeds should be applied to the payment of the $3,700 note and the Washington Investment Company's notes. This was the first time that the appellee had ever heard of the Washington Investment Company, or its indebtedness to the association, and it is admitted that she then refused to transfer the stock to the association unless the proceeds were applied to her own indebtedness.

After the transfer of the stock, and on December 24, 1894, she received through her husband a statement from the association that the proceeds had been applied in part to the payment of the Washington Investment Company's loans. On that day she notified the association that such application was incorrect and unauthorized ; that the portion thus misapplied should be applied in payment of the loan of $3,700 and the Depew loan of $5,000, with interest due thereon and taxes paid by the association on account of property given as security for the same. In its reply to this communication, the

association did not attempt to justify the application it had made of the fund upon the ground that it was done in pursuance of any agreement on her part, but solely upon the ground that it was the business of the directors to guard the interests of the stockholders of the association.

In this state of the evidence, the court below having determined its weight in favor of the contention of appellee, under the rule so frequently announced, we are precluded from disturbing its findings on this review.   We are satisfied, however, from a careful reading of the record, in the light of the circumstances and the conduct of the parties, that the finding of the court below is supported by a clear preponderance of evidence; and its judgment is accordingly affirmed.

*Affirmed.*